UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| R. C.,<br><br>                    Plaintiff,<br><br>        v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                    Defendant. | NO:  1:19-CV-3025-TOR<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary judgment (ECF Nos. 12, 13).  The Court has reviewed the administrative record and the parties' completed briefing and is fully informed.  For the reasons discussed below, the Court grants Defendant's motion and denies Plaintiff's motion.

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). 42 U.S.C. §§ 405(g); 1383(c)(3) (final determination under Title XVI "shall be subject to judicial review as provided in section 405(g)). The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."

*Id.* at 1111.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

### FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 416.1560(c); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012) (*citing Tackett*, 180 F.3d at 1099).

### ALJ'S FINDINGS

Plaintiff filed a Title II application for a period of disability and disability insurance benefits and protectively filed a Title XVI application for supplemental security income on December 31, 2014, alleging an onset date of November 1, 2013. Tr. 15. The claims were denied initially on March 6, 2012, and upon reconsideration on August 17, 2015. Tr. 15. On September 2, 2015, Plaintiff requested a hearing before an administrative law judge (ALJ). Tr. 15. Plaintiff, represented by counsel, testified at a hearing held on December 6, 2017, in Yakima, Washington. Plaintiff subsequently submitted written evidence and the ALJ admitted the evidence into the record.

The ALJ determined Plaintiff met the insured status requirements through December 31, 2018. Tr. 17. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 1, 2013, the alleged onset

date. Tr. 18. At step two, the ALJ found that Plaintiff had the following severe

impairments: "spine disorders, obesity, other disorder of the skin and subcutaneous

tissues, affective disorders, and anxiety disorders (20 CFR 404.1520(c) and

416.920(c))." Tr. 18. At step three, the ALJ determined that the claimant does not

have an impairment or combination of impairments that met or medically equaled

the severity of a listed impairment. Tr. 19.

The ALJ then determined that the Plaintiff had the residual functional

capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)

except:

> he can frequently climb ramps and stairs. He can never climb ladders, ropes,
> or scaffolds. He is able to understand and remember simple tasks and
> procedures as well as well-learned tasks. He can have superficial contact
> with the general public. He can adapt to simple changes in the work
> environment. He can carry out simple goals and plan as directed by the
> supervisors. Contact with coworkers for work tasks (collaborative) should
> be 20 minutes or less an occurrence. He is not able to perform at a
> production rate pace (e.g., assembly line work as where the pace is
> mechanically controlled) but can perform goal-oriented work or where the
> worker has more control over the pace. He may be off-task up to 10 percent
> of the time over the course of an 8-hour workday.

Tr. 20.

At step four, the ALJ found that Plaintiff is capable of performing past

relevant work as an industrial truck driver. Tr. 25. In the alternative, based on the

vocational expert's testimony, the ALJ determined there are other jobs that exist in

significant numbers in the economy that Plaintiff also can perform: cleaner,

housekeeping; deliverer, outside; and coin machine collector.  Tr. 26-27.

Accordingly, the ALJ determined Plaintiff was not under a disability at any time

from November 1, 2013 (the alleged onset date) through March 13, 2018 (the date

of the decision).  Tr. 27.  Plaintiff filed an appeal to the Appeals Council.  ECF No.

12 at 2.  The Appeals Council denied review, Tr. 1, making the ALJ's decision the

final decision.  Plaintiff now appeals to this Court.

## ISSUES

Plaintiff seeks review of the ALJ's final decision denying her benefits under

Title II and Title XVI of the Social Security Act.  Plaintiff raises the following

issues for review:

1.  Whether the ALJ erred in assessing Plaintiff's impairments at step two;

2.  Whether the ALJ erred in failing to assess Listing 8.05 at step three;

3.  Whether the ALJ erred in finding Plaintiff's testimony not entirely
    credible; and

4.  Whether the ALJ erred in weighing the opinion evidence.

ECF No. 12 at 2.

## DISCUSSION

A.  **Step Two Determination**

A claimant bears the burden at step two to demonstrate that he or she has

medically determinable physical impairments which (1) have lasted or are

expected to last for a continuous twelve-month period and (2) significantly limits her ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 404.1509. An impairment does not limit an ability to do basic work activities where it *"would have no more than a minimal effect on an individual's ability to work."* *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (emphasis in original) (quoting SSR 85-28). A step two finding of a severe impairment does not itself result in a finding of disability. Rather, the step-two analysis is "a *de minimus* screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

Importantly, if the ALJ finds the claimant has a medically determinable impairment that significantly limits the claimant's ability to do basic work activities, the ALJ proceeds to the following steps where the ALJ must consider <u>all</u> of the claimant's limitations, regardless of the label. Accordingly, the failure to identify additional impairments at this step is, by definition, harmless. In such circumstances, the claimant must demonstrate that the ALJ committed some harmful error in assessing the limitations going forward (*e.g.*, the assigned RFC), which can be related to observations made at step two.

1. **Fibromyalgia**

Plaintiff complains that the ALJ failed to identify fibromyalgia as a severe, medically determined impairment and this was harmful error. ECF No. 12 at 4-5.

1        While the ALJ determined the fibromyalgia is not a medically determinable

2    impairment, the ALJ stated: "I have considered all of the [] complaints of pain,

3    regardless of the diagnosis, and have provided for them in the residual functional

4    capacity noted below" and "[e]ven if [] fibromyalgia were found to be a medically

5    determinable, severe impairment, it would not cause any additional limitations than

6    those already noted in the residual functional capacity."  Tr. 18-19.

7        The ALJ reasonably determined that Plaintiff did not establish he was

8    properly diagnosed according to SSR12-2P.  Tr. 18.  A proper diagnosis of

9    fibromyalgia under SSR 12-2p requires evidence that other disorders that could

10   cause the symptoms or signs were excluded.  *See* Tr. 18.  Plaintiff cites to records

11   from Dr. Quave and Dr. Kim, but the records demonstrate that Dr. Quave did not

12   diagnose Plaintiff with fibromyalgia but ordered further testing, Tr. 504-505, and

13   Dr. Kim did not rule out other possible impairments – specifically mentioning the

14   possibility that Plaintiff suffered from myelopathy – and similarly ordered further

15   testing, Tr. 497-98.  Notably, Dr. Kim specifically mentioned that Plaintiff

16   "appears quite focused on obtaining opioids"; that Plaintiff "became upset" when

17   Dr. Kim recommended tapering down his prescription for Percocet; and that

18   Plaintiff "refused to follow through with all the recommendations" (sleep study

19   and pain psychology exam) and "left the clinic angry".  Tr. 498.

20

1    Further Plaintiff's argument that the ALJ committed harmful error assumes

2    – without explanation – that the ALJ did not do what he stated.  Plaintiff simply

3    argues "the ALJ presupposed the RFC would be exactly the same" and that this

4    "indicates the RFC was improperly assessed without proper consideration of

5    [Plaintiff's] impairments."  ECF No. 12 at 5-6.  Importantly, Plaintiff makes no

6    attempt to support this proposition and fails to explain how Plaintiff's RFC should

7    be more limited.  Bare assumptions are not sufficient.  Plaintiff has thus failed to

8    meet his burden that the ALJ committed harmful error, even assuming the ALJ

9    erred otherwise.

10        2.  **Migraines**

11        Plaintiff also argues the ALJ erred in finding Plaintiff's migraines non-

12   severe.  ECF No. 12 at 6.

13        The ALJ found that, despite Plaintiff testifying to frequent migraines that

14   required him to stay in a dark room for much of the day, "the records do not

15   document the degree of impairment he claimed", noting that "primary care records

16   show a few complaints of headaches, but do not document the frequency or

17   severity [Plaintiff] described at the hearing."  Tr. 18.  The ALJ specifically

18   referenced a record from April 2014 where Plaintiff went to the emergency room

19   with complaints of a migraine but "improved quickly with medication [](C15F/3)."

20

Tr. 18.  The ALJ concluded that, "while [Plaintiff] reported some headaches, these are infrequent and improve with medication."  Tr. 18.

Plaintiff argues that the ALJ erred in discounting the migraines because they were "infrequent" and that they eventually responded to medication, asserting that the migraines occurred around three times per month in 2017 and that responding to medication "is not the legal standard for assessing Step-2 severity."  ECF No. 12 at 6-7.  Plaintiff does not cite to any authority for the latter proposition.  If medication resolves the limiting effects of an impairment, it would be illogical not to take this into account in determining whether an impairment causes more than a minimal effect on a basic work activity—as is required for a severe, medically determinable impairment.  Plaintiff does not otherwise challenge the ALJ's finding that he responded well to medication.  *See* Tr. 413, 720 (Plaintiff stating "he has not tried his Percocet; headache nearly gone with medication).  This, by itself, supports the ALJ's determination, regardless of frequency.

As for the frequency, Plaintiff concedes that he was averaging around one migraine per month in 2012, but argues that "by 2017 he was having them around three times per month (Tr. 52)."  ECF No. 12 at 6-7.  Plaintiff simply cites to his own testimony in support of the frequency, however, whereas the medical record otherwise demonstrates Plaintiff's headaches occurred infrequently.  *See* Tr. 443 (Plaintiff stating migraine occurred about once per month); 716 (Patient "denies

prior headaches").  However, the ALJ did not err in finding Plaintiff was not entirely credible, as discussed below, so the ALJ was not bound to Plaintiff's testimony, especially considering the lack of supporting records.  Moreover, the ALJ's opinion made it clear that Plaintiff's self-reporting of symptoms, upon which the records mentioning headaches depend, is not reliable given his exhibition of drug-seeking behavior.

The ALJ did not err.

B.  **Listing 8.05**

Plaintiff argues the ALJ committed reversible error by failing to assess Listing 8.05.  Plaintiff asserts that Plaintiff "met or equaled this Listing and should have been [considered] disabled at Step-3."  ECF No. 12 at 8.  In Plaintiff's Motion for Summary Judgment, Plaintiff detailed "around 7 months of ongoing rashes" and asserted that he had "extensive" lesions.  ECF No. 12 at 10.  However, in Defendant's Motion, Defendant points out that Plaintiff has not demonstrated that the "extensive skin lesions" resulted in "a very serious limitation", as is required for Listing 8.05.  ECF No. 13 at 7-8.

In Plaintiff's Reply Memorandum, Plaintiff asserts he "had lesions over most of his body that were painful and irritating . . . including infections on both his arms and legs (Tr. 569), that later also spread across his abdomen (Tr. 564), back and forearms and tibia (Tr. 559)."  ECF No. 14 at 5.  Plaintiff further notes

that "[i]n February 2015, [Plaintiff] had an open wound on his right hand along with other multiple areas of rashes on his forearms and legs (Tr. 522)" and that "at that same visit, Dr. Crank had also assessed [Plaintiff] with marked limitations both in reaching and handling (Tr. 517), and his ROM along numerous dimensions (including his knee, hip, and shoulder movements) was significantly reduced (Tr. 519-20)."  ECF No. 14 at 5-6.

References to pain and irritation, alone, do not establish a very serious limitation.  Plaintiff's reference to infections and the opinion of Dr. Crank does not establish the rashes resulted in "a very serious limitation", either.  Importantly, Dr. Crank's report does not connect the complained of limitations to the rashes.  Rather, in reference to the skin problems, the record states that the "[p]ertinent negatives include fatigue" and mentions "very itchy lesions", but makes no reference to the complained of physical limitations.  Tr. 522.  Likewise, under the physical exam heading, the record includes comments on Plaintiff's skin condition without any mention of physical limitations.  Tr. 527.  In contrast, under the "neck/back pain" heading, the record states the Plaintiff has "ongoing neck/lower back pain with radiation of pain/weakness/numbness".  Tr. 522.  Further, under the section where Dr. Crank opines as to Plaintiff's limitations, the rashes are not mentioned as a diagnosis (while neck/back pain are), Tr. 517.

Plaintiff asserts that "[t]he Commissioner's own assessment of whether [Plaintiff] had sufficient functioning in his arms and legs (Def. Br. at 7) is unavailing because the ALJ wholly failed to assess this Listing." ECF No. 14 at 6. However, as Plaintiff notes, "[a] failure to assess a Listing when the record provides significant evidence it was met or equaled is [] harmful error." ECF No. 12 at 8 (citing *Molina*, 674 F.3d at 1115). The record does not provide such "significant evidence", so the ALJ did not need to address it. If Plaintiff's argument were correct – that the commissioner cannot now explain why the listing was not met – a Plaintiff could raise an issue not addressed by the ALJ and secure a remand simply because the issue was not addressed, even if the issue lacked merit. Plaintiff has not shown harmful error.

C. **ALJ's Evaluation of Plaintiff's Credibility**

Plaintiff next contends that the ALJ improperly discredited Plaintiff's subjective complaints.

Evaluating the credibility of a claimant's testimony regarding subjective pain requires the ALJ to engage in a two-step analysis. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036 (internal citations and quotation marks omitted). This

requires "medical evidence consisting of signs, symptoms, and laboratory findings." 20 C.F.R. §§ 416.908; 416.927. A claimant's statements about his or her symptoms alone will not suffice. 20 C.F.R. §§ 416.908; 416.927.

Once an impairment has been proven to exist, the claimant need not offer further medical evidence to substantiate the alleged severity of his or her symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). As long as the impairment "could reasonably be expected to produce [the] symptoms," the claimant may offer a subjective evaluation as to the severity of the impairment. *Id.* This rule recognizes that the severity of a claimant's symptoms "cannot be objectively verified or measured." *Id.* at 347 (quotation and citation omitted).

If an ALJ finds the claimant's subjective assessment unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F .3 d 947, 958 (9th Cir. 2002). In making this determination, the ALJ may consider, *inter alia*: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Id.* If there is no evidence of malingering, the ALJ's reasons for discrediting the claimant's

testimony must be "specific, clear and convincing." *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (quotation and citation omitted). Where there is affirmative evidence of malingering, the ALJ need only provide specific and legitimate reasons to discount the claimant's statements. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

The ALJ may not reject the claimant's subjective symptom testimony "simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged." *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1282). Nor may the ALJ discredit the subjective testimony as to the severity of the symptoms "merely because they are unsupported by objective medical evidence." *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir.1998). On the other hand, "the medical evidence is still a relevant factor in determining the severity" of the claimant's limitations. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

In assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. *Molina v. Astrue,* 674 F.3d 1104, 1113 (9th Cir.

2012) (citations and quotation marks omitted). A claimant's failure to assert a good reason for not seeking treatment can cast doubt on the sincerity of the claimant's pain testimony. *Id*.

After considering the evidence of record, the ALJ found that Plaintiff's medically determinable impairments could have reasonably been expected to produce the alleged symptoms, but his statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely consistent with the medical evidence and other evidence in the record. Tr. 21.

The Court finds the ALJ did not err in finding Plaintiff was not entirely credible. Specifically, the ALJ reasonably concluded that the record demonstrated a pattern of inconsistent statements, drug seeking behavior, a failure to follow through with any alternative treatment recommendations (which also supports the finding of drug seeking behavior), and grossly inconsistent behaviors between appointments. Tr. 21-24. These are clear and convincing reasons for discounting Plaintiff's credibility.

1. **Failure to follow through with recommended treatment**

Plaintiff asserts that the "ALJ improperly discredited [him] for not engaging in counseling and instead taking psychiatric medications" and asserts this is not "indicative of inadequate mental health engagement." ECF No. 12 at 18. The Court disagrees. Plaintiff repeatedly failed to follow through with recommended

treatment, and gave no substantive reason for such.  The ALJ reasonably relied on

Plaintiff's failure to follow through with the recommended therapy, which is a

standard recommended treatment for anxiety and depression.

Plaintiff also complains that the ALJ considered Plaintiff's failure to follow

through with physical therapy and his reliance primarily on pain medications.  ECF

No. 12 at 18.  Plaintiff asserts that the ALJ must consider attempts to seek and

follow treatment and consider justifiable reasons certain treatments were not

pursued.  ECF No. 12 at 18.  Plaintiff argues that, "[a]lthough he did not follow-up

despite interest at intake . . . , the record indicates he has to be taken to all

appointments, and the only place he drives is to his mother's house"; Plaintiff "was

not even oriented to the date when being evaluated by Dr. Sawyer"; and Dr.

Sawyer "found his judgment to be poor and his insight to be very poor to nil."

ECF No. 12 at 18.

As an initial matter, as discussed more below, Dr. Sawyer's observations

were given little weight because Plaintiff's conduct at the exam was markedly

inconsistent with the record otherwise.  As such, his statements do not demonstrate

Plaintiff was unable to follow through with the recommended treatments.

Further, contrary to Plaintiff's assertions, the ALJ reasonably found that

Plaintiff was able to drive a car to get around, Tr. 20-21, 24, and specifically noted

that he drove himself to his April 2015 appointment.  ECF No. 8 at 23.  These

conclusions are supported by Plaintiff's testimony: in response to the ALJ's question about whether Plaintiff normally drives to get around, Plaintiff responded "[m]ostly my mom, or friends", which suggests he does drive himself around at least sometimes. Tr. 68. Notably, Plaintiff was able to otherwise make it to his appointments where he sought pain medications, and Plaintiff does not point to anything in the record where Plaintiff indicated he could not make it to the alternative treatments, as opposed to merely choosing not to do so. Indeed, the ALJ's opinion provides a reasonable alternative basis for Plaintiff not following through with recommended treatment: he was only looking for pain medications. *See*, *e.g.*, Tr. 496 (treatment notes showing Plaintiff was "heavily focused" on retaining medication and asked about finding a different provider who would prescribe him narcotics; did not follow through with resources that could otherwise help manage stress and pain; did not return to this provider after being denied medication; and tried to convince doctor to contact his other doctor to convince that doctor to prescribe medications).

### 2. **Normal range of motion findings; no significant findings re: spine**

Plaintiff complains that "the ALJ found it inconsistent [Plaintiff] had a few normal ROM findings during a single ER visit shortly after his onset date." ECF No. 12 at 19 (citing Tr. 22). The ALJ stated: "Interestingly, despite his complaints at the hearing of being primarily limited due to neck pain, during an evaluation in

the hospital, he had normal neck range of motion []." Tr. 22. Plaintiff notes that the visit was specifically to assess his ammonia exposure, but that does not detract from the findings noted in the record, which are inconsistent with Plaintiff's statements at the hearing. *See* Tr. 622.

Plaintiff also complains that the ALJ found that "other than his rash, [Plaintiff] also had 'no significant findings' related to his spine." ECF No. 12 at 19 (quoting Tr. 22). Plaintiff points to Dr. Crank's opinion, ECF No. 12 at 19, but the only objective evidence in his report includes a slight limitation in the range of motion of the neck. Tr. 519. Plaintiff otherwise points to records that only indicate pain without mention of significant limitations therefrom. ECF No. 12 at 19 (citing Tr. 497, 582).

### 3. **Inconsistency regarding leaving pain clinic**

Plaintiff notes that "the ALJ found it inconsistent [Plaintiff] indicated he stopped going to the pain clinic because his doctor left" but argues this is "largely an irrelevant issue". The Court disagrees. This is direct evidence of dishonesty. Aside from this, the finding supports the overall trend that Plaintiff evidenced drug seeking behavior, which is heavily implicated by Plaintiff's attempt to hide from the ALJ the true reason for not seeing the doctor. The record fully supports the ALJ's finding of inconsistency and supports an overall finding of drug-seeking behavior:

[Plaintiff] returns today for follow-up of his consultation concerning pain and stress management. He is very concerned today, following his appointment with Dr. H.Y. Kim, that he is being tapered down [off] his narcotic medication. He is heavily focused today on retaining that medication.

I spent time discussing with [Plaintiff] the kinds of coping skills that I can offer him here and that we can help teach him in our groups and classes. [Plaintiff] was not particularly interested in those. He was focused on ways to keep his medication or find somewhere else to prescribe that for him. He explained that, if he did not have his medication, he would just stay in bed all day and would not be able to attend any of our classes or groups. He wanted me to help him contact his doctor in Oregon to convince that individual to prescribe him narcotics, which I explained that I would not be able to do. He wants to switch to a different doctor within this clinic to see if that individual would prescribe narcotic medication. It is my understanding that patient need [*sic*] to be discussed at spine conference in order to switch providers.

[Plaintiff] is invited to follow up if he is interested in learning coping skills for managing stress and pain. It is not clear at the end of the appointment: whether or not he is willing to take me up on that.

Tr. 496

### 4. **Inconsistent behavior at mental examination**

Plaintiff argues the "ALJ improperly found [Plaintiff] appeared to his psychiatric exam for benefits in a manner in 'stark contrast' to his presentation on other occasions." ECF No. 12 at 20 (citing Tr. 23). Plaintiff argues the ALJ identified the wrong provider – Dr. Crank – instead of Dr. Sawyer and that Plaintiff's "presentation during this exam was also highly consistent with other behaviors noted throughout the record." ECF No. 12 at 20. As to the

misidentification, this has no bearing on the opinion, as the ALJ rightly accorded

the exam to Dr. Sawyer later and the misidentification does not alter the analysis.

As to Plaintiff's contention that the exam was consistent with the record

otherwise, Plaintiff notes that other providers found Plaintiff unkempt, dirty,

agitated, anxious, depressed, distressed, uncomfortable, moaning, restless, fussy,

and a poor or vague historian. ECF No. 12 at 17. However, these notations do not

match the extreme behavior and inability to provide basic information exhibited by

Plaintiff at his exam with Dr. Sawyer. Rather, the ALJ reasonably found

Plaintiff's presentation at the evaluation was out of place with the record

otherwise.

Notably, Dr. Sawyer observed that Plaintiff "simply cannot put a history

together" and "is literally not capable of [filling] in the blanks, and yet he showed

up for his appointment on time and he is unable to tell me of anybody having given

him any help to do so." Tr. 596. Further, Dr. Sawyer noted that Plaintiff showed

up in "an over-sized dirty shirt with a pair of hiking pants that are dirty and a pair

of shoes that are quite dirty" and that he was "malodorous to the point that it

literally made [Dr. Sawyer's] eyes water when [he] was sitting in the room with

him." Tr. 595. Among other gross deficiencies, Plaintiff was unable to adequately

convey basic details about his complained-of psychiatric problems. Tr. 596-97.

1    While Plaintiff points to other records suggesting Plaintiff was unkempt or a

2    poor historian, the ALJ reasonably found Plaintiff's "odd behavior" at the

3    evaluation with Dr. Sawyer was not consistent with other records. As the ALJ

4    reasonably concluded, the primary care records in the months before and after this

5    appointment show "the claimant to be alert and oriented with no significant

6    psychiatric impairment." Tr. 25. Plaintiff complains that the ALJ did not

7    specifically cite to the record, but the ALJ identified records "in the months before

8    and after this appointment". In the paragraph preceding the ALJ's observations at

9    issue, Tr. 23, the ALJ cites to records from early 2015. Tr. 22. In the cited to

10   record, there is no mention of Plaintiff's drastic inability to convey his history

11   exhibited with Dr. Sawyer; rather the record suggests Plaintiff was able to function

12   at a much higher level given the details provided. *See* Tr. 614-16, 620 (March

13   2015: Plaintiff discussing physical therapy, side effects of medications, current

14   health status, the absence of limitations from depression; filling out questionnaire;

15   record does not list any significant problems under psychiatric). The records

16   throughout are otherwise inconsistent with Plaintiff's inability to recall basic facts.

17   *See* Tr. 588 (in March 2014, Plaintiff reported "it is not difficult at all to meet

18   home, work, or social obligations").

19        5.  **Other complaints of inconsistencies**

20        Plaintiff otherwise complains that the inconsistencies noted by the ALJ are

not material, ECF No. 12 at 20-21, but inconsistencies are material for credibility determinations and the ALJ otherwise provided ample reasons to find Plaintiff's allegations not entirely credible.

Having thoroughly reviewed the record, the Court finds that the ALJ supported the adverse credibility findings with specific, clear and convincing findings which are supported by substantial evidence.

D. **Medical Opinions**

A treating physician's opinions are entitled to substantial weight in social security proceedings. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d at 1216 (*citing Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995)). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228 (quotation and citation omitted).

Plaintiff complains that the ALJ did not fully credit the opinions of Dr. Crank and Dr. Sawyer. Other opinions contradicted the opinions of Dr. Crank and Dr. Sawyer, so the ALJ needed to only provide a specific and legitimate reason for discounting the opinions.

### 1. **Dr. Crank**

The ALJ accorded the opinion of Dr. Jeremiah Crank "little weight", noting that, while Dr. Crank "opines that the claimant is limited to sedentary work, his own evaluation from that day showed the claimant to have only mildly reduce[d] range of motion." Tr. 24. The ALJ also noted that "[r]ecords in the months leading up to February 2015 show limited findings on physical evaluations and indicate that despite being given a referral to physical therapy, the claimant did not follow through with this", reasoning that "[s]ubsequent records show limited efforts toward treatment and do not support the need for such significant limitations." Tr. 24.

The ALJ did not err. Notably, Dr. Crank only referenced the range of motion exam under the objective evidence relied upon, which only showed mildly reduced range of motion. Tr. 519-520. As for the records leading up to the exam, the ALJ specifically observed that "[d]uring an appointment in July 2014, [Plaintiff] continued to complain of severe pain but a physical examination showed him to have generally full range of motion and normal mobility" and the "[r]ecords

throughout the remainder of 2014 show . . . no significant findings regarding his complaints of back and neck pain[.]" Tr. 22. The record supports the ALJ's conclusion. *See* Tr. 579 (dated July 2014; documenting "[n]o cervical spine tenderness" and "[n]o lumbar spine tenderness", and a full range of motion); Tr. 569 (dated October 14, 2014; documenting normal range of motion, normal musculature); Tr. 569 (dated October 22, 2014; documenting no cervical spine tenderness, no thoracic spine tenderness, no lumbar spine tenderness).

Further, while Plaintiff complains that the ALJ did not properly address the handling and reaching limitations posed by Dr. Crank, there was no explanation provided for this limitation. Tr. 517. The record only mentions the subjective complaints of severe neck and lower back pain and cervical radiculopathy and the objective evidence of the range of motion sheet. Tr. 516-17. Notably, the subjective complaints do not support the handling and reaching limitation and the range of motion exam showed full range of motion in Plaintiff's elbow, forearm, wrist and thumbs with only mild limitations in the shoulder. Tr. 520.

Plaintiff asserts that he did not seek the recommended physical therapy based on his alleged barrier to treatment. ECF No. 12 at 14. As addressed above, this argument is based on unsupported speculation, as Plaintiff was otherwise able to make his appointments and Plaintiff does not point to any evidence that he did not attend physical therapy because of a barrier, as opposed to personal choice. In

any event, the ALJ otherwise provided specific and legitimate reasons for discounting Dr. Crank's opinion.

2. **Dr. Sawyer**

As detailed above, the ALJ reasonably determined that Plaintiff's odd behavior exhibited at the examination with Dr. Sawyer was not consistent with the record otherwise. Because Dr. Sawyer's opinion was based solely on Plaintiff's behavior, the ALJ did not err in discounting the opinion of Dr. Sawyer. Further, the ALJ rightly noted that Dr. Sawyer's opinion that the claimant "will have difficulty" in different functional area does not provide any specific functional limitations. Tr. 25.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment, ECF No. 13, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, ECF No. 12, is **DENIED**.

The District Court Executive is hereby directed to file this Order, enter Judgment for Defendant, provide copies to counsel, and **CLOSE** this file.

DATED October 25, 2019.



THOMAS O. RICE
Chief United States District Judge